FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -7  PM 2: 31

LORETTA G. WHYTE
CLERK

## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLAUDE QUEST** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-1388** |
| **N. BURL CAIN, WARDEN** | **SECTION "I"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

I.   **Factual Background**

The petitioner, Claude Quest ("Quest"), is incarcerated in the Louisiana State Penitentiary at Angola, Louisiana.[2]  On May 21, 1998, Quest and a co-defendant, Princess B. McKay, were

---

[1]Under Title 28 U.S.C. § 2254(e)(2), the District Court may hold an Evidentiary Hearing only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence, and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 2, Petition.

Fee_____
Process_____
X  Dktd_____
  CtRmDep._____
  Doc. No_____

indicted by a Jefferson Parish Grand Jury with one count of possession with intent to distribute heroin.[3]

The record reflects that, on March 26, 1998, there was a disturbance at the Hibernia Bank located on Williams Boulevard in Kenner, Louisiana, involving McKay and an unidentified male concerning a check.[4]  McKay was yelling and beating on the cab and window of a pick-up truck which was in front of her vehicle in or near the drive-up lanes of the bank.  Quest was also present and tried to get McKay to get into their vehicle.  Quest was not otherwise involved in the yelling or pounding on the pick-up truck.

The bank manager, Don Whatley, intervened because the vehicles were blocking one of the bank's drive-up lanes.  Whatley asked the parties to leave the bank's premises.  When they refused, he flagged down a nearby police car driven by off duty Sergeant Thomas Allen.  Whatley told Sergeant Allen that both Quest and McKay were causing the disturbance.

Sergeant Allen separated the parties and instructed Quest and the unidentified male to stay near the pick-up truck.  He sent McKay, who was still yelling and fidgety, to stand near Quest's Chevrolet Blazer.  Shortly after, Officer Christopher Mitchell arrived at the scene and questioned the men about the disturbance.

In the meantime, Sergeant Allen stood with McKay by the Blazer.  According to Sergeant Allen, McKay leaned into the back seat where her two children were sitting.  As she leaned over the front seat, McKay grabbed her child's shoe as if to tie it.  However, Sergeant Allen, who was

---

[3]St. Rec. Vol. 2 of 4, Indictment, 5/21/98.

[4]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Quest*, 772 So.2d 772, 777-78 (La. App. 5th Cir. 2000); St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 00-KA-205, p. 3-5, 10/18/00.

standing in the open doorway of the vehicle, testified that McKay actually untied the child's shoe and then started to re-tie it.  The officer watched McKay remove one hand from her blouse and throw a prescription pill bottle onto the back seat, while she continued to tie her child's shoe.

At that point, Sergeant Allen instructed McKay to stand by Officer Mitchell.  Sergeant Allen then seized the pill bottle.  As he did so, one of the children, who was approximately five years old, said, "That's my mama's medicine."  After Allen took the pill bottle, he saw that the bottle lacked a prescription label on the outside and that it did not contain medication or pills.  He opened the bottle and discovered foiled packets similar to those used to hide narcotics.  Sergeant Allen gave the pill bottle to Officer Mitchell and then left the scene.  Officer Mitchell, in turn, gave the bottle to Detective Sandino, a narcotics detective, who was called to the scene to field test the unknown off-white substance found in the foiled packets for narcotics.  It was determined that the substance was heroin.

Quest and McKay were initially arrested at the scene for disturbing the peace.  Later that day during questioning, Quest gave a statement admitting that the heroin belonged to him and that he was a dealer.  Thereafter, he was charged with possession with intent to distribute heroin.

Approximately two weeks after the incident, Sergeant Allen learned that McKay had not been arrested because of a misunderstanding on the part of Officer Mitchell.  As a result, Sergeant Allen obtained an arrest warrant for McKay on the narcotics charge.

Quest and Mitchell were tried before a judge on April 20 and 21, 1999.[5]  McKay was acquitted and Quest was found guilty as charged.[6]  Quest's counsel filed a Motion for New Trial

---

[5]St. Rec. Vol. 1 of 4, Trial Minutes (Quest), 4/20/99; Trial Minutes (McKay), 4/20/99; St. Rec. Vol. 2 of 4, Trial Transcript, 4/20/99; St. Rec. Vol. 3 of 4, Trial Transcript, 4/21/99.

[6]St. Rec. Vol. 1 of 4, Trial Minutes (Quest), 4/20/99; Trial Minutes (McKay), 4/20/99.

arguing that the denial of the motion to sever and for the exclusion of other crimes evidence forced Quest to waive the right to a jury trial and resulted in a difficult defense against the State and a hostile co-defendant.[7]  The Trial Court denied the motion at a hearing held on May 19, 1999.[8]  The Trial Court thereafter committed Quest to the mandatory sentence of life imprisonment.[9]

Quest's appointed counsel appealed to the Louisiana Fifth Circuit Court of Appeal alleging four errors: (1) the Trial Court erred for failure to suppress evidence obtained pursuant to an illegal arrest; (2) the Trial Court erred by failing to sever the co-defendants; (3) the Trial Court erred by denying Quest's Motion for New Trial; and (4) the verdict was contrary to the law and evidence.[10] On October 18, 2000, the Louisiana Fifth Circuit affirmed Calvin's conviction finding no merit to the alleged errors.[11]

On November 16, 2000, Quest filed a pro se writ application with the Louisiana Supreme Court postmarked November 2, 2000.[12]  In that application, Quest raised the same claims as those

---

[7]St. Rec. Vol. 1 of 4, Motion for New Trial, 5/17/99.

[8]St. Rec. Vol. 1 of 4, Motion Hearing Minutes, 5/19/99; St. Rec. Vol. 3 of 4, Motion Hearing Transcript, 5/19/99.

[9]St. Rec. Vol. 1 of 4, Sentencing Minutes, 5/19/99; Amended Sentencing Minutes, 5/19/99 (corrected 10/25/00); St. Rec. Vol. 3 of 4, Motion Hearing Transcript, 5/19/99.

[10]St. Rec. Vol. 3 of 4, Appeal Brief, 00-KA-0205, 4/17/00.

[11]*State v. Quest*, 772 So.2d at 772; St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 00-KA-205, p. 25, 10/18/00.  The Court also directed the Trial Court to clarify to Calvin the period allowed for seeking post-conviction relief under La. Code Crim. P. art. 930.8.

[12]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 00-KO-3137, 11/16/00; St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2000-KO-3137, 11/16/00.

raised by counsel on direct appeal.[13]   The Supreme Court denied the application without reasons on

November 2, 2001.[14]

Quest's conviction became final 90 days later, on January 31, 2002, because he did not file

a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.

1999) (period for filing for certiorari with the United States Supreme Court is considered in the

finality determination under Title 28 U.S.C. § 2244(d)(1)(A)).

## II.   **Procedural Background**

On March 21, 2002, Quest filed an Application for Post Conviction Relief in the Trial Court

alleging four grounds for relief: (1) the Trial Court erred by denying the motion to suppress his

statement; (2) the Trial Court erred by granting the State's request to have him removed from the

courtroom; (3) the Trial Court allowed an officer to testify as an expert without qualifications and

erred in admitting his opinion testimony; and (4) the indictment should have been quashed based

on an illegal jury selection process and racial and gender discrimination in the selection process.[15]

The court denied the application by order issued May 10, 2002, finding the first claim was repetitive

of a claim addressed on appeal, the second and third claims were waived for failure to raise them

on appeal, and the fourth claim was waived for lack of a contemporaneous objection.[16]

---

[13]*Id.*

[14]*State v. Quest*, 800 So.2d 866 (La. 2001); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2000-KO-3137, 11/2/01.

[15]St. Rec. Vol. 1 of 4, Uniform Application for Post Conviction Relief, 3/21/02.

[16]St. Rec. Vol. 1 of 4, Trial Court Order (2 pages), 5/10/02.

On June 10, 2002, Quest filed a Writ Application in the Louisiana Fifth Circuit seeking review of the Trial Court's order.[17]  The Appellate Court denied the application on June 18, 2002, finding no error in the Trial Court's ruling.[18]

Quest filed another Writ Application in the Louisiana Supreme Court on July 29, 2002, postmarked July 9, 2002.[19]  The Louisiana Supreme Court denied the Application without reasons on August 29, 2003.[20]

### III.    Federal Petition

On June 23, 2004, Quest filed the instant Petition for Federal Habeas Corpus Relief in which he raises eight grounds for relief:[21] (1) the trial court erred in denying the motion to suppress his statement; (2) the trial court failed to suppress the evidence obtained after an illegal arrest; (3)(a) the selection of the grand jury foreperson was discriminatory, (b) the grand jury was selected pursuant to impermissible local and special laws, and (c) the improper exclusion of qualified individuals from eligibility for service on the grand jury; (4) the trial court erred in denying the motion to sever co-defendants; (5) the trial court erred by allowing expert testimony absent pertinent qualifications of witness; (6) the trial court erred in denying the motion for new trial; (7) the trial

---

[17]St. Rec. Vol. 1 of 4, 5th Cir. Order, 02-KH-584, 6/18/02.  The record does not contain a copy of this Writ Application.  The filing date appears on the face of the Order and has been confirmed with the Clerk of the Louisiana Fifth Circuit.

[18]*Id.*

[19]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 02-KH-2111, 7/29/02; St. Rec. Vol. La. S. Ct. Letter, 2002-KH-2111, 7/29/02.

[20]*State ex rel. Quest v. State*, 852 So.2d 1013 (La. 2003); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2002-KH-2111, 8/29/03.

[21]Rec. Doc. No. 2, Petition, Memorandum in Support, p. iv-v.

court erred by granting the prosecutors request to have petitioner removed from the courtroom; and (8) the verdict was contrary to the law and evidence.[22]

The State opposes the petition alleging that three of Quest's claims are procedurally barred from federal review and that the remaining claims are without merit.[23]

## IV.    **Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, went into effect on April 24, 1996[24] and applies to habeas petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Quest's petition, which is deemed filed in this Court under the federal "mailbox rule" on May 12, 2004.[25]

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000) and provides different standards for questions of fact, questions of law and mixed questions of fact and law.  A state court's determinations of questions

---

[22]In his memorandum in support, Quest switched the numbers assigned to issues number seven and eight listed herein. The Court will maintain the numbers as identified on the contents page of Quest's memorandum.

[23]Rec. Doc. No. 5.

[24]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Quest's petition on June 23, 2004, the date on which the filing fee was paid.  Quest, however, signed the petition on May 12, 2004, which is the earliest date he could have submitted it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA, which provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.

A state court's decision is "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.  The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992).  The Court, however, noted that an unreasonable application of federal law is different from an incorrect

8

application of federal law.  *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly."  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

Before proceeding to the merits, the threshold questions in habeas review under the AEDPA are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  In this case, the State concedes that the petition is timely and the claims are mostly exhausted.  However, the State argues that three of the claims are in procedural default and are therefore barred from federal habeas corpus review.  The State also contends that the remaining five claims are without merit.  The Court must first consider the issue of procedural default before proceeding to the merits of the remaining claims.

V.    <u>**Procedural Default**</u>

The State argues that three of Quest's claims are procedurally barred and thus preventing federal habeas review. The claims are alleged to be: (3)(a) the selection of the grand jury foreperson was discriminatory, (b) the grand jury was selected pursuant to impermissible local and special laws, and (c) the improper exclusion of qualified individuals from eligibility for service on the grand jury; (5) the trial court erred by allowing expert testimony absent pertinent qualifications of witness; and (7) the trial court erred by granting the prosecutors request to have petitioner removed from the courtroom. Quest has not replied to the State's argument that he has defaulted on these claims.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32.

This type of procedural default bars federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the

10

state court has relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In this case, the record reflects that three of Quest's claims, the third, fifth and seventh, were barred from review by the State Trial Court on post conviction review for procedural reasons.[26] The Trial Court refused to address the merits of Quest's third claim regarding the grand jury composition and the validity of his indictment, because he did not timely object to either as required by Louisiana law. The Trial Court also refused to consider on post conviction review Quest's fifth claim, regarding the expert testimony of the police officer, and the seventh claim, regarding his removal from the courtroom, because the claims should have been raised on direct appeal and were therefore procedurally barred from consideration. The subsequent rulings by the Louisiana Fifth Circuit and the Louisiana Supreme Court did not provide the legal basis for the denials. Thus, the last reasoned state court decision was that of the Trial Court which entered procedural grounds for dismissal of these claims. *See Ylst*, 501 U.S. at 802.

Therefore, the state courts barred review of two of Quest's claims based on procedural defaults pursuant to La. Code Crim. P. Art. 930.4(C)[27] and one claim pursuant to La. Code Crim. P.

---

[26]On post conviction review, the state trial court also refused to consider the claim regarding denial of the motion to suppress because it was repetitive of a claim raised on direct appeal. La. Code Crim. P. Art. 930.4(A) prevents "further" state review and is therefore not a true procedural bar even when the claims were addressed on the merits on direct appeal. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994). Because the claim was addressed on direct appeal, there is no state procedural bar to federal review of this claim.

[27]La. Code Crim. P. Art. 930.4(C) provide as follows:
C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

Art. 841.[28] This Court must consider whether the bars prohibit consideration of the claims on federal habeas corpus review.

### A.     Independent State Grounds

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338.  As noted above the sole basis for dismissal of the third, fifth and seventh claims were state procedural grounds, which are independent of federal law.  *See e.g.*, *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (dismissal under La. Code Crim. P. Art. 930.4 is independent of federal law); *Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000) (Same as to Art. 930.4); and *see e.g.*, *Duncan v. Cain*, 278 F.3d 537 (5th Cir. 2002) (Louisiana's contemporaneous objection rules are independent of federal law).

### B.     Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).  For a state procedural rule to be adequate, it must be one that the state courts strictly and regularly follow and it must be applied evenhandedly to the vast majority of similar claims. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339).

---

[28]La. Code Crim. P. Art. 841 provides as follows:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
C. The necessity for and specificity of evidentiary objections are governed by the Louisiana Code of Evidence.

1.     **Art. 930.4(C)**

La. Code Crim. P. Art. 930.4(C) prevents post-conviction review of a claim that could have been raised on direct appeal and was not.  The Trial Court used this as the basis for refusing review of Quest's challenges both to the expert testimony and to his removal from the courtroom.  The Trial Court determined that both issues were appealable issues that could have been previously raised.

Under Louisiana law, Art. 930.4(C) prevents review of such a claim on post conviction review.  *See Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000).  For this reason, it is adequate to prevent federal review of Quest's fifth and seventh claims because they could have been raised on direct appeal and were not.

2.     **Contemporaneous Objection Rules**

Louisiana law, La. Code Crim. P. Art. 841, provides that certain challenges must be preserved by pretrial motion to quash or by contemporaneous objection.  Furthermore, La. Code Crim. P. Art. 930.4(B) prohibits post conviction review of a claim which should have been raised before or during trial and was not.

In this case, the Trial Court refused to review Quest's third claim raising grand jury and indictment challenges pursuant to *Campbell v. Louisiana*, 523 U.S. 392 (1998), and its progeny, which provides a right of action to all defendants, regardless of race, for racial discrimination in the selection and composition of grand juries in Louisiana.[29]  The Trial Court found that Quest did not

---

[29]In *Campbell*, the Supreme Court first recognized that a white defendant has third-party standing to assert an equal protection challenge, as well as a due process challenge, based upon discrimination against blacks in the grand jury selection process used in all Louisiana parishes except Orleans under La. Code Crim. P. Art. 413(B).  The *Campbell* court found that, although Campbell specifically challenged the discriminatory selection of the grand jury foreperson under the Louisiana system, the court treated Campbell's claim as a challenge to the discriminatory selection of grand jurors.  *Campbell*, 523 U.S. at 397.  The Louisiana statute, La. Code Crim. P. Art. 413(B), was amended to prevent any potential for discrimination in light of *Campbell*.  See La. Code Crim. P. Art. 413(B) (West Supp. 1999), amended by Acts 1999, No. 984 §1.

pursue a motion to quash, or other contemporaneous challenge, addressing the racial composition

of the grand jury, the discriminatory selection process or the validity of the indictment.  For this

reason, the Court held that his claims, referred to herein as his *Campbell* claims, were waived and

otherwise barred from review.  The Louisiana Fifth Circuit and the Louisiana Supreme Court

acquiesced in this ruling when the subsequent writ applications were denied without reasons.  *See*

*Ylst*, 501 U.S. at 802.

Traditionally, Louisiana's contemporaneous objection rules have been considered adequate

grounds on which Louisiana courts, and federal courts, rejected claims of invalid indictments based

on discrimination in the selection of the grand jury and forepersons under Louisiana law prior to

*Campbell. See Francis v. Henderson*, 425 U.S. 536, 540-41 (1976) (failure to file a pretrial motion

to quash as required by Louisiana law stands as a waiver of the right to challenge the grand jury

composition which the federal courts must respect) (citing *Michel v. Louisiana*, 350 U.S. 91, 97-98

(1955) (same) (discussed *infra*)); *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997) (petitioner

failed to file pretrial motion to quash regarding his claim of discrimination in the grand jury

foreperson selection process and was procedurally barred under Louisiana law and federal review

was also barred).

Since the issuance of *Campbell*, the Louisiana courts consistently and evenhandedly applied

this procedural bar in similar post-*Campbell* cases, refusing to review the merits where no

contemporaneous pretrial motion to quash or objection was made.  *State v. Woodberry*, 820 So.2d

638 (La. App. 4th Cir. 2002); *State v. Richthofer*, 803 So.2d 171 (La. App. 5th Cir. 2001); *State v.

Robinson*, 754 So.2d 311, 322 (La. App. 2nd Cir. 2000);  *State ex rel Roper v. Cain*, 763 So.2d 1,

4-5 (La. App. 1st Cir. 1999), *writ denied*, 773 So.2d 733 (La. Nov. 17, 2000); *State v. Straughter*, 727 So.2d 1283 (La. App. 4th Cir.), *writ denied*; 747 So.2d 14 (La. 1999).

A review of these cases reflects that Louisiana courts consistently enforce the waiver or procedural bar to *Campbell* claims when the defendant has failed to file a pretrial objection or motion to quash the grand jury indictment. This consistent application renders the procedural bar imposed against Quest an adequate and independent state law bar to his challenges to the grand jury composition and indictment.

Quest will be excepted from the procedural bars to federal review of his claims only if he can show cause for his defaults <u>and</u> prejudice attributed thereto. Alternatively, he could demonstrate that the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). These exceptions to the imposition of a bar will be addressed below.

### C.    <u>Cause and Prejudice</u>

To establish a cause for his procedural default, Quest must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Quest has not replied to the State's procedural bar defense nor has he demonstrated in his pleadings the existence of any objective factor <u>external</u> to the defense that impeded counsel's ability to raise the claims prior to trial or on direct appeal.

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and indeed, Quest alleges no actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

**D.**    **Fundamental Miscarriage of Justice**

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. To establish this, petitioner must provide this court with evidence supporting a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Quest has not pointed to any new or existing evidence creating a reasonable doubt as to his guilt or establishes his actual innocence. *See Murray*, 477 U.S. at 496. Furthermore, the alleged innocence arguments now raised were before the state courts and offer no basis for reasonable doubt on habeas corpus review. The Court has also reviewed Quest's insufficient evidence claim, *infra*, and finds it to be without merit. When the petitioner has not factually established his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Quest has not met this alternative exception to the procedural bar, his procedurally defaulted claims, Nos. 3, 5 and 7, must be dismissed with prejudice without review of the merits.

The Court, however, will address the merits of the remaining claims, numbers one, two four, six and eight using the standard of review set forth above.

## VI.   **Merits Review of the Remaining Claims**

### A.   **Denial of the Motion to Suppress his Statement (Claim No. 1)**

During his interview with police after the arrest, Quest apparently confessed that he owned the heroin found in McKay's medicine bottle and that he planned to sell it.[30]  The defendants filed a motion to suppress the evidence seized, i.e. the bottle of heroin, and Quest's statement on the basis that the arrest was made without probable cause.  The Trial Court denied the defendants' motion to suppress the evidence and Quest's statement after a hearing held October 1, 1998.[31]

Quest raised the issues of the unlawful arrest and the involuntariness of his plea on direct appeal.  The Court held that there was sufficient probable cause to support Quest's initial arrest for disturbing the peace based on the complaints of the bank manager.  Consequently, the Court determined that the seizure and statement were lawfully obtained and the Trial Court did not err in denying the motion to suppress.

In this federal habeas corpus petition, Quest now alleges that his motion to suppress the confession should have been granted because he was under the influence of heroin at the time and he was induced to make the statement in return for the promise of leniency toward his co-defendant and their children.  The State argues that the factual findings made by the state court regarding the voluntariness of the statement are entitled to a presumption of correctness.

---

[30]St. Rec. Vol. 2 of 4, Motion Hearing Transcript, p. 34, 10/1/98.

[31]*Id.*

The admissibility of a confession is a mixed question of law and fact which warrants independent consideration by a federal court in a habeas proceeding. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). However, the state court findings on subsidiary factual matters are conclusive for a habeas court if fairly supported in the record. *Id.* at 117. Further, the habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir.1993), *cert. denied*, 510 U.S. 1025 (1993), (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)). Thus, a federal court entertaining a collateral challenge to the voluntariness of a confession is obliged to afford a presumption of correctness to state court findings of fact if fairly supported in the record but is authorized to exercise de novo review over the ultimate conclusion of whether, under the totality of the circumstances, the confession was "voluntary." *Carter v. Johnson*, 131 F.3d 452, 461-62 (5th Cir. 1997). The determination of the voluntariness of a confession requires the court to consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002). First, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion, or deception. *Moran*, 475 U.S. at 421. Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *Carter*, 131 F.3d at 462 (citing *Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986)).

Second, the relinquishment must be made with a full awareness of the nature of the right being waived. *Id.*

Furthermore, although mental state or condition may be a significant factor in the voluntariness determination, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Carter*, 131 F.3d at 462 (citing *Connelly*, 479 U.S. at 164).

Also, even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to a harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Under this analysis, in order to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Therefore, even if this Court were to find that Quest's Fifth Amendment rights were violated, the Court would have to also consider whether the admission of the confession was harmless in determining the verdict. *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003).

In Quest's case, as required by *Jackson v. Denno*, 378 U.S. 368 (1964), the Trial Court conducted a hearing on the voluntariness of his inculpatory statement to police. The Trial Court concluded that the confession was freely and voluntarily made. The Louisiana Fifth Circuit later entered its own findings, which constitutes the last reasoned decision on the issue.

In its opinion, the Louisiana Fifth Circuit carefully reviewed the transcript from the Trial Court's hearing on the motion to suppress, as has this Court. The court determined, based on the transcript and the Trial Court's conclusions, that Quest's statement was voluntarily made to the police after being read his *Miranda* warnings. The Court recognized that Quest told officers he had

taken heroin almost six hours before the interview.  However, the Court credited the officers testimony at the hearing and at trial that Quest's demeanor was normal, that his speech was not slurred, and that he appeared to understand the charges, the questions, and the circumstances of the questioning.  The Court also determined that nothing told to Quest by the police officers amounted to an unlawful inducement or a promise of leniency to compel him to make the otherwise voluntary statement.  In that regard, the Court held that the police did not promise leniency to Quest or to McKay in return for his statements.  For these reasons, the Louisiana Fifth Circuit found no error in the Trial Court's denial of the motion to suppress the statement or the use of the statement at trial.

The determination of whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are entitled to deference when supported by the record as it is in this case.  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992); *see also Miller*, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness).  Therefore, this Court presumes that the state court's factual findings that Quest failed to present evidence of improper inducements and there was no evidence that the officers threatened him in securing his statement, is correct.

The Louisiana Fifth Circuit also entered extensive factual findings concerning the voluntariness of the confession, finding, *inter alia*, that Quest was timely advised of his *Miranda* rights; that he understood his rights; that he was offered no inducements to confess and suffered no threats or coercion to extract a confession while in custody; that he was mentally competent in spite of his prior drug use; that he was cooperative and coherent at the time he made his confession; and that he acknowledged orally and in writing that his statement was made voluntarily and with full

understanding of the rights he was waiving. These factual findings are also entitled to the presumption of correctness. *See Id.*

To overcome the presumption of correctness as to these findings, Quest must rebut these factual findings by clear and convincing evidence which he has not done. In his federal habeas petition, Quest seeks to overcome the factual findings by conclusory allegations of coercion, intimidation, and drug use. These allegations, however, are unsupported by the evidence adduced at the motion hearing and at trial. The state courts' factual determinations are adequately supported by the record. Therefore, this Court on habeas corpus review must accept as conclusive the state courts' factual determination that the challenged statement or confession was voluntary and was not a product of coercion or mental incompetence caused by prior drug use. Having found the statement to be voluntary, the harmless error analysis is not necessary.

Accordingly, the state courts' denial of relief on this issue is not contrary to or an unreasonable application of Supreme Court precedence. Quest is not entitled to relief on this claim.

## B. Failure to Suppress the Evidence (Claim No. 2)

Quest also alleges that the Trial Court's failure to suppress the evidence, i.e. the pill bottle and the statement, insofar as it was evidence, was in violation of the Constitution. The State alleges that the federal court has no authority to reconsider this evidentiary ruling under the Fourth Amendment.

In the instant case, the Trial Court conducted a full hearing on Quest's motion to suppress. During that hearing and at trial, the police officers testified that Quest was identified by the bank manager as one person involved in the argument in the bank parking lot and he was the owner of the car in which McKay's pill bottle was recovered. The Trial Court therefore determined that there was

21

probable cause to detain and arrest Quest. Thus, there was a proper basis for the seizure of the evidence and securing his statement under the Fourth Amendment. Consequently, this Court cannot review the seizure of the evidence under these circumstances.

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.*, at 494. A full and fair hearing means a hearing where there are facts in dispute. Full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (*per curium*) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The *Stone v. Powell* prohibition applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim. *Andrews v. Collins*, 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian v. McKaskle*, 731 F.2d 1196, 1199 n.1 (5th Cir. 1984); *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978). Thus, absent proof by petitioner that he was denied a full and fair hearing in the state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

The record clearly reflects that Quest was provided a full hearing on his motion to suppress. He was again afforded meaningful appellate review in the Louisiana Fifth Circuit on direct appeal. Quest has not referenced any undeveloped evidence sufficient to call into question the reliability of

the state court's determination of his Fourth Amendment claims. *Andrews*, 21 F.3d at 631; *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *Christian*, 731 F.2d at 1199.

It is not the role of the federal habeas corpus court to question the outcome of the state courts' rulings but instead to assure the opportunity to fairly and fully litigate the claim. The State provided Quest, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claim fully and fairly in the trial court and on appeal.

Accordingly, the holding in *Stone v. Powell* bars further review of this claim. Quest, therefore,  is not entitled to federal habeas corpus relief on this claim.

### C.    Denial of the Motion to Sever (Claim No. 4)

Quest alleges that the Trial Court erred in failing to sever his trial from that of McKay's trial. He contends that he and McKay had  opposing interests on the issue of guilt.  He also contends that there were opposing positions on the possession and ownership of the drugs.

The Louisiana Fifth Circuit offered the last reasoned decision on this issue on direct appeal. In denying relief, the Court noted that Quest offered no evidence of antagonistic defenses at the hearing on the motion to sever.  The Court further held that the evidence at trial also failed to establish that the defenses were antagonistic since McKay never argued that the pill bottle or the heroin belonged to Quest.  Quest, on the other hand, argued that he never saw McKay with the heroin.  Thus, the Court concluded, the defenses were not antagonistic.

Under Louisiana law, defendants who are jointly indicted will be tried jointly, unless upon motion of the defendant and after a hearing, the trial court is satisfied that the ends of justice require severance. *See* La. Code Crim. P. Art. 704(2).  To establish that justice requires a severance, a defendant must show by convincing evidence that his defense will be antagonistic to the defense

offered by the other defendant. *State v. Vale*, 650 So.2d 379, 385 (La. App. 5th Cir. 1995), *aff'd in part, rev'd in part on other grounds*, 666 So.2d 1070 (La. 1996).

As an initial consideration, Quest has not alleged any factual or legal basis to support this claim. In his habeas corpus petition, Quest merely argues that the police officers' testimony at trial was contrary to his defense and to that of McKay. However, he failed to argue or demonstrate a contradiction between his defense and McKay's defense, which is the issue. For this reason, he has not specifically identified how his defense strategy at trial was antagonistic to that of his co-defendant, McKay, or vice versa, and none is born out by the record. *See United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. 1981). Without evidence of this, the state courts' denial of relief on this claim is not contrary to or an unreasonable application of Supreme Court precedent. Quest is not entitled to relief on this claim.

**D.**     **Denial of the Motion for New Trial (Claim No. 6)**

Quest next alleges that the Trial Court erred in failing to deny his motion for a new trial. He argues the following: the Trial Court erred by failing to sever the trials which allowed the State to establish his guilt via his association with McKay; the failure to sever the trials also forced him to waive his right to a jury trial; the Trial Court failed to exclude other crimes evidence related to his drug use and other drug activities; and, the evidence was insufficient to support the conviction, a claim also raised separately by Quest.[32] The State argues that this claim is without merit for the reasons set forth by the state appellate court on direct appeal.

---

[32]He also argues that all of the errors he alleges in this federal habeas corpus petition compound to entitle him to a new trial under Louisiana law. Each issue has been individually addressed and found to be without merit or procedurally barred.

The Louisiana Fifth Circuit denied relief on this claim finding that there was no error in refusing to sever the trials. It also found that Quest voluntarily and knowingly waived his right to a jury trial, that the court did not err in allowing evidence of Quest's prior drug use at trial, and finally that there was sufficient evidence to support the verdict. The Court therefore denied relief.

Quest now argues that the state court violated the Louisiana Code of Criminal Procedure and state jurisprudence interpreting the Code when it denied the motion for new trial on these grounds. A federal court will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *See Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986). "We do not sit as a 'super' state supreme court" in such a proceeding to review errors under state law. *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir. 1970); *see Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir. 1979).

Quest further has failed to show that the state court's denial of his motion for new trial or affirmance of that denial on appeal, constituted a violation of any constitutional right necessary to obtain federal habeas corpus relief. This claim, therefore, provides no basis for federal habeas corpus relief. *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990). Even examining Quest's individual grounds forming the basis of the motion for new trial, this Court can find no constitutional error that would entitle him to habeas corpus relief.

### 1.    **Failure to Sever**

Quest alleges that the motion for new trial should have been granted because it was error for the Trial Court to deny a severance of the trials. As discussed in detail previously, the Trial Court's failure to sever the trials of Quest and McKay was not unconstitutional nor was it contrary to or an unreasonable application of Supreme Court precedent. There is no merit to this portion of Quest's claim.

## 2.     <u>Waiver of Jury</u>

Next, Quest argues that his waiver of a jury trial was not voluntary but instead was forced by the Trial Court's decision not to sever the co-defendant coupled with the fact that McKay was wearing prison clothes on the day of trial. The Louisiana Fifth Circuit resolved this issue on appeal finding that the waiver was proper under Louisiana law because it was express, knowing and voluntary.

The United States Supreme Court has stated that "since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942). The waiver of any constitutional right must also be an "intentional relinquishment or abandonment of a known right." *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000) (*quoting Johnson v. Zerbst*, 304 U.S. 458 (1938)). The Supreme Court later refined this standard in *Brady v. United States*, 397 U.S. 742 (1970), by requiring that valid waivers be not only voluntary but also "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*, at 748. The standard is applied without distinction between waiver of the right to remain silent during interrogation, the right to confer with counsel, the right to representation by competent counsel at trial, the right to contest accusations of criminality through a plea of not guilty, the right to trial by jury, and the right to be present at trial. *Mata*, 210 F.3d at 329 (citing *United States v. Garcia*, 517 F.2d 272, 276 (5th Cir.1975)).

On federal habeas review, the state courts' findings of a valid waiver are presumed correct unless Quest can establish that the findings are not supported by the record. *Espada v. Dretke*, 2005

WL 579596 (N.D. Tx. Mar. 10, 2005) (citing *Armstead v. Scott*, 937 F.3d 202, 210 (5th Cir. 1995)).

Having reviewed the record, he has not done so.

The trial transcript reflects the following exchange between counsel, the defendants and the

Trial Court on the morning of trial:

> MS. DAVIS:          Judge, I just conferred with my client, Ms. McKay, and she said she would go on the record at this time and waive our right to a jury trial and have selected to do a Judge trial, which will take care of the situation with the clothing.
>
> MR. FLEMING:          Judge, at this time as well, Mr. Quest would also waive his right to a jury trial and would like to be tried the Court alone.
>
> THE COURT:          Alright. Is the State ready to proceed?
>
> MR. ODINET:          Yes sir, your Honor. We have our witnesses outside. At this time, I would request that the Court do a colloquy with each of the defendants to determine individually as per the appellate court rulings.
>
> . . .
>
> THE COURT:          Ms. McKay, I will begin with you first. It's my understanding that you have elected to be tried in a Judge trial as opposed to a jury trial. Do you understand that you are entitled and you have the right to be tried by a jury of your peers in this case?
>
> MS. MCKAY:          Yes, I do.
>
> THE COURT:          And you have decided that you would rather be tried by the Court at this time, is that correct?
>
> MS. MCKAY:          Yes.
>
> THE COURT:          Do you have any questions?
>
> MS. MCKAY:          No sir.
>
> THE COURT:          Mr. Quest, I understand that you also have decided that you do not wish to be tried by a jury and you have elected to proceed with a Judge trial in this matter, is that correct?
>
> MR. QUEST:          Yes sir.
>
> THE COURT:          Do you have any questions?
>
> MR. QUEST:          No sir.
>
> THE COURT:          And this has fully been explained to you by your attorney?

27

MR. QUEST:          Yes sir.

THE COURT:          Counsel, is there anything else you feel might be appropriate that needs to be addressed at this time?

MR. FLEMING:        In terms of waiving the jury, no, Your Honor. We just want to make clear for the record that the Court yesterday did deny the motion to sever and the motion in limine, after hearing argument on the record on April the 19th , 1999.

THE COURT:          That's correct.

The transcript confirms that McKay was present in some form of clothing that caused her concern as indicated by her counsel.  The separate exchange between the Court and Quest nevertheless reveals a clear and informed decision by Quest to separately waive his right to proceed before a jury.  Quest made no mention of the reason why he too chose to proceed before a judge. Instead, when he asked if he had questions, Quest responded with a simple "no."

Quest has not alleged nor does the record establish that he was under duress, or was otherwise mentally incapable of understanding the decision to waive his right to a jury trial.  He acknowledged to the Trial Court that he understood what he was doing and that he had discussed it with his counsel.  The record further supports the state court's conclusion that Quest was an experienced criminal defendant, having had two prior criminal prosecutions, including one where he was found guilty.

In addition, Quest has not established that he was left with no choice but to proceed with a judge trial as he suggests in his brief.  The record does not demonstrate that either the prosecution or the Trial Court compelled Quest to waive his rights.  The record shows that McKay chose to waive her right to a jury because of her clothing.  Once she waived her right, there was no reason why Quest could not have insisted on maintaining his right to proceed with a jury.  In fact, had he done so, the Trial Court would have been compelled to reconsider the severance issue since the same

28

trial could not be held both with and without a jury.  Therefore, the record does not demonstrate that Quest was forced into waiving his right to a jury trial by the decisions of the Trial Court or because McKay was not properly dressed for trial.  The records shows that his decision was both knowing and voluntary.

For these reasons, the state court's denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent.  He is not entitled to relief.

### 3.      Other Crimes Evidence

Quest also alleges that the Trial Court erred by allowing other crimes evidence at trial. Specifically, Quest refers to that part of his statement to the police in which he admitted that he used heroin earlier that day and that he was involved in drug sales in the past.  The State argues that the admission of the entire confession was appropriate under Louisiana state evidence law and that the confession was otherwise knowing and voluntary.

These issues were addressed by the Louisiana Fifth Circuit on direct appeal.  The Court held that the admission of the statement that he was involved in prior drug sales tended to prove the material issue of intent to distribute and was therefore properly admitted at trial under state law.  The Court further held that the portion of the statement regarding prior use of heroin had no purpose but to establish Quest's "bad character."  In that regard, under state law, that portion of the statement should have been excised.  However, the Court determined that its admission was harmless error since it had no actual impact on the verdict reached by the Trial Court.

Federal habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).  The states are free to implement procedures regarding the

admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Burgett v. State of Texas*, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are <u>not</u> cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict);  *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's evidentiary error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

The question of due process in the criminal proceeding presents a mixed question of law and fact. *Dickson v. Sullivan*, 849 F.2d 403, 405-06 (9th Cir. 1988). Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

In *Lisenba*, the Supreme Court stated that this kind of denial of due process "is the failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it [the Court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba*, 314 U.S. at 236. In keeping with this principle, the United States Court of Appeals for the Fifth Circuit has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief <u>only</u> if it is "material in the sense of a crucial, critical, highly significant factor." *Hills v.*

*Henderson*, 529 F.2d 397, 401 (5th Cir. 1976) (quotation omitted); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

However, under Louisiana law, the introduction of other crimes evidence is allowed "when it is related and intertwined with the charged offense to such extent that the state could not have accurately presented its case without reference to it." *State v. Haarala*, 398 So.2d 1093, 1097 (La. 1981). When the evidence is used in this manner, it is not inadmissable. *See Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).

In this case, the Louisiana Fifth Circuit determined that Quest's statement that he was previously involved in drug distribution was not inadmissable because it was used to show proof of Quest's intent and was therefore an integral part of the crime charged. The record before this Court shows that the statement established Quest's intent, which is a integral part of the crime of possession with intent to distribute. *Robinson v. Whitley*, 2 F.3d 562, 566-67 (5th Cir. 1993). Under these circumstances, it cannot be concluded that Quest has established an evidentiary error amounting to a due process violation or denial of a fundamentally fair trial. *Neal*, 141 F.3d at 214; *Robinson*, 2 F.3d at 567.

Quest also challenges the admission of another part of his statement in which he admitted to police that he had used drugs previously that day. As noted by the state court, the question was asked in an effort to establish his mental state to establish the voluntariness of his statement, an issue resolved earlier in this opinion. Nevertheless, the Louisiana Fifth Circuit found that the statement should have been excluded, however, the admission of the statement was harmless error under state law since it did not impact the trial judge's guilty verdict.

31

On the federal level, *Brecht v. Abrahamson,* 507 U.S. 619 (1993), is the applicable Supreme Court law articulating the appropriate standard for determining whether a constitutional error was harmless in a federal habeas challenge to a state conviction or sentence. *Robertson v. Cain,* 324 F.3d 297, 304-307 (5th Cir. 2003) (federal habeas courts are to use the *Brecht* analysis in all cases governed by the AEDPA). In *Brecht,* the Supreme Court held that a federal habeas court may not grant relief on trial errors, such as this one, unless the petitioner demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637-38; *see Tucker v. Johnson,* 242 F.3d 617 (5th Cir. 2001) (the court must assume the evidence was erroneously admitted before *Brecht* could be applied) (citing *Corwin v. Johnson,* 150 F.3d 467, 476 (5th Cir. 1998)).

According to the record, the Louisiana Fifth Circuit determined that the statement regarding heroin use should have been excluded. In finding the admission to be error, the Court determined that error to be harmless in light of the evidence of guilt, including Quest's other admission that he planned to sell the heroin found in the bottle, the amount of heroin and its packaging, and the properly admitted admission that he sold heroin in the past. The state court determined that the guilty verdict was not attributed to the admission of prior drug use and the admission was therefore harmless.

These factual conclusions reached by the appellate court are supported by the record, as will be discussed in more detail in the Court's sufficiency of the evidence review, *infra*. This Court also cannot conclude that the statement had a substantial influence on the trial judge's verdict of guilt. Therefore, the state court's denial of relief on this issue was not contrary to or an unreasonable application of *Brecht*. Quest is not entitled to relief on this claim.

**E.**   **Verdict Contrary to Law and Evidence (Claim No. 8)**

In his final claim, Quest alleges that the evidence was not sufficient to establish all of the elements of possession with intent to distribute heroin. He raised this claim on direct appeal as part of his challenge to the denial of the motion for new trial. Citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1969) and related state cases, the Louisiana Fifth Circuit held that the evidence at trial was sufficient to establish that Quest had constructive possession of the heroin and that he admitted he sold heroin and intended to sell the heroin found in the bottle. The court concluded that the evidence was sufficient to convict Quest beyond a reasonable doubt.

A claim of insufficiency of the evidence is reviewed by a federal habeas court under the due process standard announced by the Supreme Court in *Jackson*, which was relied upon by the state appellate court in affirming Quest's conviction. *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991). The *Jackson* standard applies to both bench and jury trials. *Gilley v. Collins*, 968 F.2d 465, 467 n.3 (citing *Jackson*, 443 U.S. at 309, 311 n.3, 317 n.8). Under this standard, a criminal defendant may not be convicted absent a finding of guilt beyond a reasonable doubt by the trier of fact and, it follows, where no rational trier of fact could find guilt beyond a reasonable doubt, a conviction under such circumstances cannot stand. *Jackson*, 443 U.S. at 316-17.

However, the trial court's findings on an issue of fact will be upset only where necessary to preserve the "fundamental protection of due process of law." *Jackson*, 443 U.S. at 319. Where the prosecution has failed to prove beyond a reasonable doubt any element of a crime, a resulting conviction is "not consistent with the demands of the Federal Due Process Clause." *Fiore v. White*, 531 U.S. 225, 229 (2001) (*per curiam*). Thus, in reviewing a claim of insufficient evidence, this Court must determine whether, looking to the elements of the offense as defined by state substantive

33

law, and viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000).

Quest was charged with and convicted of violating La. Rev. Stat. Ann. § 40:966(A), possession of heroin with the intent to distribute. To support a conviction for possession of a controlled dangerous substance, such as heroin, with the intent to distribute, the State was required to prove that the Quest knowingly and intentionally possessed the heroin and that he did so with the specific intent to distribute it. *State v. Smith*, 649 So.2d 1078, 1081 (La. App. 4th Cir. 1995).

The elements of knowledge and intent are states of mind that need not be proven as facts, but may be inferred from the circumstances. *State v. Reyes*, 726 So.2d 84, 88 (La. App. 5th Cir. 1998); *State v. Davies*, 350 So.2d 586, 588 (La. 1977). While specific intent to distribute is a necessary element to convict, Louisiana courts have held that such intent may be established by proving factual circumstances surrounding the possession giving rise to a reasonable inference of intent to distribute; such circumstances include: "previous distribution by the defendant; presence of paraphernalia for distribution; possession of an amount sufficient to create a presumption of intent to distribute; and packaging in a form usually associated with distribution rather than personal use." *State v. Jones*, 731 So. 2d 389, 393 (La. App. 4th Cir.), *writ denied*, 751 So.2d 234 (La. 1999).

The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. *State v. Williams*, 802 So.2d at 914. Under Louisiana law, a person not in physical possession of a drug may have constructive possession when the drug is under that person's dominion or control. *State v. Reyes*, 726 So.2d at 88. Factors considered in determining whether a defendant exercised dominion and control sufficient to

34

constitute constructive possession may include: 1) the defendant's knowledge that illegal drugs were in the area; 2) his relations with the person found to be in actual possession; 3) the defendant's access to the area where the drugs were found; 4) evidence of recent drug use by the defendant; 5) the existence of paraphernalia; and, 6) evidence that the area was frequented by drug users. *State v. Williams*, 735 So.2d 62, 69 (La. App. 5th Cir. 1999) (citing *State v. Appacrombie*, 616 So.2d 285, 288 (La. App. 2d Cir. 1993).

In Quest's case, the State presented evidence and testimony pertaining to the quantity and packaging of the heroin, as well as other attendant circumstances at the time of the arrest. For example, the officers testified that the bottle was in the possession of McKay, Quest's girlfriend, and was recovered by police from the backseat of Quest's car. The officers did not find use-paraphernalia in the car indicative of personal use. And, most compelling, Quest acknowledged that the heroin found in the pill bottle belonged to him and that he intended to sell it. He further told police that he previously was involved in drug distribution in the area. All of these factors permit the inference that the narcotics found were for distribution and not personal use. From this evidence, the trial judge could reasonably conclude that Quest not only constructively possessed the heroin but that he also had the intent to distribute it.

Thus, contrary to Quest's contentions, the record supports the trier-of-fact's conclusion of guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319 (considering post-conviction factual findings in the light most favorable to the prosecution). Therefore, Quest has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Quest is not entitled to relief on this claim.

## VII.    Recommendation

It is therefore **RECOMMENDED** that Claude Quest's Petition for Issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

Houston, Texas, this _____ day of December, 2005.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**